Frederick FESEL, Plaintiff,

v.

MASONIC HOME OF DELAWARE,
INC., a Delaware Corporation,
Defendant.

Civ. A. No. 76–238.

United States District Court,
D. Delaware.

March 14, 1977.

Thomas S. Neuberger, of Bader, Dorsey & Kreshtool, Wilmington, Del., for plaintiff.

Clement C. Wood, and John H. Benge, Jr., of Allmond & Wood, Wilmington, Del., for defendant.

Josephine A. Trevathan, E. E. O. C., Washington, D. C., appearing as amicus curiae.

## OPINION

STAPLETON, District Judge:

In this lawsuit brought under Title VII of the Civil Rights Act of 1964, a male nurse claims that the defendant Masonic Home unlawfully discriminated against him on the basis of his sex when he applied for employment as a nurse's aide in 1973. The defendant has moved for summary judgment on three grounds. First, the Masonic Home contends that the failure of the Equal Employment Opportunity Commission ("EEOC") to comply with its own regulations in processing the plaintiff's discrimination charge deprives this Court of jurisdiction to hear this lawsuit. The Home further argues that it is exempt from the requirements of Title VII under the "private membership club" exception to the Act found in 42 U.S.C. § 2000e(b).[1] Finally, it claims that, given the nature of the Home and its guests, sex is a "bona fide occupational qualification" for the nurses aide job in question.[2] On the basis of the record before me, none of these contentions is sufficient to support the granting of summary judgment. Accordingly, the defendant's motion will be denied.

## I. FACTUAL BACKGROUND.

### A. *Plaintiff's Job Application.*

The Masonic Home is a retirement home with a current population of twenty-two

---

1. The Court wishes to express its gratitude to the EEOC which appeared as *amicus curiae* and ably briefed the question of whether the Home is an exempt employer.

2. *See* 42 U.S.C. § 2000e-2(e).

women and eight men whose average age is 82.1 years. On November 5, 1973, the plaintiff, who was a nursing student at the time in question and has since become a registered nurse, responded to a newspaper advertisement placed by the defendant seeking nurses aides. Ms. Doris E. Husted, Assistant Superintendent of the Home, informed Mr. Fesel that because of the predominantly female population of the Home it would not employ a male nurses aide.

The record shows that a substantial portion of the women at the Home are "total care" patients. They need assistance of nurses aides in performing virtually all activities, including activities involving intimate personal contact such as bathing, dressing and using bathroom facilities. Because of this and because of what they perceive as their residents' preferences, the Home has never employed male nurses or nurses aides. In connection with this litigation, nine of the women who are residents at the Home have signed forms circulated by the defendant expressing their objection to being cared for by male nurses aides. Several persons who have placed their mothers in the residence have written letters stating that they oppose permitting a male to care for the intimate needs of their mothers. None of the male residents have objected to being cared for by female aides.

### B.  *Administrative Proceedings.*

When the plaintiff was rejected for employment, he filed a charge of discrimination against the Home with the EEOC. As required by the statutory scheme of Title VII, the EEOC, in November of 1973, deferred for sixty days to the appropriate state agency, in this case the Delaware Department of Labor ("DOL"), to permit it to conduct an investigation of the charge and to seek a conciliation between the parties. On March 21, 1975, the State issued a determination of reasonable cause to believe the defendant had discriminated against Fesel. It appears that the Home was not notified by DOL that it was considering the matter until April 9, 1975, when it sent out a copy

of its determination and suggested a meeting of all parties for purposes of conciliation. The next document that appears in the record is DOL's letter of April 28, 1975, informing the Home that the agency was closing its file in the matter because it was unable to contact the charging party, Fesel.

In the meantime, the EEOC's jurisdiction resumed on or about January 4, 1974, when the sixty day deferral period expired. EEOC served the Home with notice of Fesel's charge of discrimination on February 14, 1974, and on September 25, 1975, EEOC made its determination of reasonable cause to believe that the charge was true. The determination recited that, "Substantial weight has been accorded to the findings of the Delaware State Labor Department."

### C.  *Organization And Governance Of The Home.*

The Masonic Home is a Delaware membership corporation affiliated with the Grand Masonic Lodge of Delaware, an unincorporated association. It is a tax exempt charitable organization under Section 501(c)(3) of the Internal Revenue Code.[3] The Home is formally governed by a Board of Managers which is selected in the following manner. Local Masonic lodges in Delaware elect members of the Grand Lodge. Members of the Grand Lodge select a Grand Master and it is a duty of the Grand Master to appoint the Board of Managers of the Home. The Board then chooses a superintendent who operates the Home on a day-to-day basis.

Under the corporate charter and by-laws of the Home, the members of the Grand Lodge are designated as the members of the corporation. This status, however, apparently bears no relation to actual admission to the Home nor does it confer authority to decide who will be admitted. In order to be admitted to the Home, a person must be a Master Mason who has been in good standing with the Masons continuously for five years, or a wife of a Mason or a widow

---

**3.**  26 U.S.C. § 501(c)(3).

of a Mason who has not remarried a non-Mason. Application is made through the local Lodges. The local Lodge conducts an investigation and, if it determines that an applicant is suitable, both the individual and the Lodge apply to the Home. Approval by the local Lodge virtually assures admission as long as there is space available. The residents of the Home do not participate in admissions decisions nor do they otherwise direct the manner in which the Home is run. Members of the general public are not admitted and, accordingly, the Home does no advertising directed to the public.

Except as just described, the Home is independent from the Masons. It is operated separately and maintains separate facilities. The Grand Lodge does not pay the salaries of Home employees nor are there any common medical, profit-sharing or other kinds of plans. The Home is funded by charitable contributions and by the funds residents transfer to the Home when they are admitted. It receives no public funds.

## II. PROCEDURAL DEFAULTS.

Defendant points to two procedural defects in the agency proceedings on Fesel's charge of discrimination: the EEOC's failure to serve notice of the charge within ten days of resuming jurisdiction over the matter[4] and the EEOC's reliance on the "findings" of the State DOL which had been made without the benefit of a public hearing.[5] The Home argues that these instances of noncompliance with governing regulations denied it due process of law and have the further effect of depriving this Court of jurisdiction over the complaint. These contentions are without merit and deserve only brief discussion.

It is established beyond the question that an individual litigant is not barred from filing suit under Title VII by a procedural failing on the part of the EEOC.[6] The Court has jurisdiction over a Title VII suit brought by an individual provided the plaintiff has complied with all those jurisdictional requirements that are within his control.[7] Defendant does not argue that the plaintiff here failed to meet those statutory requirements that were his responsibility.

Defendant does acknowledge that courts have consistently rejected his jurisdictional argument;[8] he urges the Court to create an exception for cases in which the error of the EEOC was not merely "technical" or "inadvertent", but "flagrant". Were this Court inclined to fashion an exception, prejudice to respondent would have to be a necessary element and I find no prejudice to the Home in this record.

The defendant does not seriously contend that it was prejudiced by the Commission's one month delay in giving the statutory notice. The determination did not issue until nineteen months later and only after the Home had been given the opportunity to submit any affidavits or argument it wished the Commission to consider. The Home's side of the story was not before the Commission only because it failed to avail itself of this opportunity.

The defendant places more emphasis on the failure of the DOL to hold a hearing and the fact that the Commission purported to give weight to the DOL's findings. These circumstances, however, have not prejudiced the defendant. Even if the administrative proceedings had been flawless and even if the Commission found against Fesel, Fesel would have been free to file

---

4. 29 C.F.R. § 1601.13 (1975).

5. 29 C.F.R. § 1601.19b(e)(1)(i) (1975).

6. *See Garvin v. American Life Insurance Co.*, 416 F.Supp. 1087, 1091 (D.Del.1976), and cases cited therein.

7. *Healen v. Eastern Airlines, Inc.*, No. 18,097, 8 FEP Cases 917, 922 (N.D.Ga. December 26, 1973).

8. *See, e. g., Quarles v. Philip Morris, Inc.*, 271 F.Supp. 842, 846–47 (E.D.Va.1967).
   Where EEOC itself brings suit, a different rule is sometimes applied. *See EEOC v. Airguide Corp.*, 539 F.2d 1038 (5th Cir. 1976).

this very same lawsuit.[9] The administrative proceedings, regardless of whether or not they result in a finding of reasonable cause to believe unlawful discrimination occurred, simply do not affect the outcome of any subsequent judicial proceedings. Accordingly, I fail to perceive the claimed prejudice.

## III. PRIVATE MEMBERSHIP CLUB.

Congress provided that bona fide private membership clubs, other than labor organizations, which were exempt from taxation under 26 U.S.C. § 501(c) were not to be bound by the requirements of Title VII.[10] The Masonic Home contends that it is just such a private membership club. Plaintiff concedes that the Masonic Home is tax exempt under Section 501(c), and that the Grand Lodge of Masons, the Home's sponsoring organization, is a private membership club within the meaning of the Act. The dispute is whether that status extends to the Home.

■ Stripped to its essentials, defendant's first line of defense seems to be as follows: the Masons constitute a private club; without the Masons, there would be no Masonic Home; therefore, the Home is a private club. The linchpin of this argument is that the Masons and the Home cannot be considered separately. I reject that proposition. Legally and factually, the two organizations, though related, are distinct. The Home is separately incorporated and operated. It has different purposes and it serves a different group of people. If the Home is a private membership club, it must establish its status as such independently.

I turn now to the task of interpreting the term "private membership club". There is no legislative history and only the most meager case law discussing the purpose of this statutory exemption. I have concluded that the most reasonable interpretation is that the Title VII exemption was designed to be a companion to and further implement the purposes of the private club exclu-

sion in Title II, the public accommodations provisions of the Civil Rights Act. In Title II, Congress sought to preserve a small, non-commercial enclave for the unfettered exercise of the freedom of association, a setting in which people would be free "to engage in association for the advancement of beliefs and ideas . . . ." *NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958). Congress acknowledged in Title II that under existing law people are entitled to such a preserve even when the ideas they wish to foster are racially or otherwise invidiously discriminatory. *See Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). By including a similar exemption in Title VII, Congress made it possible, in this limited setting, for those who wish to restrict the universe of their personal associates to also determine with whom they would associate in their employer-employee relationships.

With this congressional purpose in mind, it is necessary to decide whether the Masonic Home has a "membership" of the kind for whom Congress created the statutory exclusion. In this connection, it must be recalled that there is a dichotomy between the membership of the Home as a corporation, the Grand Masons, and the membership of the group who are the beneficiaries of, and participants in, the Home's activities, the residents. I think there can be no doubt that the proper focus is on the residents of the Home. It is, after all, the associational interests of the residents that the Home argues it has a right to protect and it is the residents who come into contact with those whom the Home selects as employees. On the other hand, the members of the corporation do not participate in the program and activities of the Home and, indeed, have no reason by virtue of their status to even be on the premises. No substantial associational interests can possibly arise from their limited connection with the Home.

■ The next step in the analysis is to consider whether the residents of the Home

---

**9.** 42 U.S.C. § 2000e–5(f)(1).

**10.** 42 U.S.C. § 2000e(b).

can reasonably be said to constitute a private club. Again, I think it apparent they cannot. The Home is surely private: its membership is highly restricted; it receives no public funds; its facilities are not open to the public.[11] Nevertheless, on a purely linguistic basis, it strains the English language to say that a retirement home, similar in all its essential characteristics to other retirement or nursing homes, is a club.[12] Moreover, the Home does not have some of the salient attributes of a club.

A "club" is defined as "a group of people associated for a common purpose or mutual advantage, usually in an organization that meets regularly".[13] *Daniel v. Paul*, 395 U.S. 298, 301, 89 S.Ct. 1697, 23 L.Ed.2d 318 (1969), cited self-government and owner-membership as two of the traditional features of a private club. In *Cornelius v. Benevolent and Protective Order of Elks*, 382 F.Supp. 1182, 1203 (D.Conn.1974), the court noted that one of the principal ways in which club members exercise self-governance is through control over admission of new members.

■ The residents of the Masonic Home have no powers of self-governance in the running of the Home. They have no say in whether to accept or reject a proposed member and no authority, direct or indirect, with respect to staff selection. They have no ownership interests in the Home by virtue of being residents there. Finally, they have not organized together for some common objective. Rather, each resident is there with the individual objective of securing the shelter and care he or she needs and, because of age or infirmity, cannot provide for himself or herself. Given all of these circumstances, I cannot conclude that the Masonic Home is a private membership club.

To state it another way, the residents of the Home are not accorded "membership" in the Home. They are given none of the indicia of membership listed above. The only other "membership" of the Home, the members of the Grand Lodge, does not have the kind of interest in the Home that Congress sought to protect. Thus, the Home is without a membership of the kind that would be entitled to claim the exemption.

## IV. BONA FIDE OCCUPATIONAL QUALIFICATION.

Title VII provides that an employer may establish sex as a qualification for employment where being of a particular sex is a "bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise, . . . .".[14] EEOC, the agency authorized to administer the Act, by regulation, has determined that this exception to the Act should be narrowly construed,[15] and the courts have agreed.[16]

■ In order to succeed in its claim, the defendant will have to prove [17] there is a factual basis for its contention that all or substantially all men would be unable to perform effectively the duties of the job of nurses aide.[18] The forms which the resi-

---

11. *See Tillman v. Wheaton-Haven Recreational Ass'n*, 410 U.S. 431, 438, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973); *Solomon v. Miami Woman's Club*, 359 F.Supp. 41, 44 (S.D.Fla.1973).

12. *See Mills v. Fox*, 421 F.Supp. 519 (E.D.N.Y. 1976), in which the court noted, ". . . a nursing home providing services to the aged for a price would not be a private 'club' in any usual sense of the word."

13. Webster's New World Dictionary of the American Language 270 (2d College Ed. 1972).

14. 42 U.S.C. § 2000e–2(e)(1).

15. 29 CFR § 1604.2 (1975).

16. *See, e. g., Diaz v. Pan American World Airways, Inc.*, 442 F.2d 385 (5th Cir.), *cert. denied*, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971).

17. The burden is on the defendant to show that sex is a bona fide occupational qualification. *Weeks v. Southern Bell Telephone & Telegraph*, 408 F.2d 228, 232 (5th Cir. 1969).

18. *Id.*, 235. The plaintiff has cited *Jurinko v. Wiegand*, 477 F.2d 1038, 1044 n. 11 (3rd Cir. 1973), in support of the position that sex can never be a legitimate job qualification, that employment decisions must always be made on the basis of individual capacities. While there is some language in the cited footnote that

dents of the Home signed expressing their objection to being cared for by males are insufficient for this purpose when considered against plaintiff's affidavit in which he states that, in his professional capacity, he has faced similar objections by other elderly women and has been able to overcome the objections and provide both psychological reassurance and proper health care.[19] The Court does not wish to treat cavalierly either the interests of privacy and personal dignity the Home asserts on behalf of its residents or the interests of a male attempting to break into a profession that has traditionally been reserved to females. In order to determine the proper balance of these interests, a fully developed record on the BFOQ defense is necessary.

lends some support to such a view, that would seem to make the BFOQ provision in the statute meaningless. I am not prepared to say that the Third Circuit intended to accomplish such a sweeping result in a footnote citation to the District Court's opinion.

19. *Compare* plaintiff's Exhibit A *with* defendant's Exhibit I. In this connection the record also establishes that the women signing the forms are each treated by a male gynecologist.