Carol QUIJANO et al.,
Plaintiffs-Appellants,

v.

UNIVERSITY FEDERAL CREDIT
UNION, Defendant-Appellee.

No. 78-2644.

United States Court of Appeals,
Fifth Circuit.

May 15, 1980.

Malcolm Greenstein, Austin, Tex., for plaintiffs-appellants.

Rinehart, Nugent & Lock, Jerry Nugent, Austin, Tex., for defendant-appellee.

Before BROWN, GEWIN and POLITZ, Circuit Judges.

GEWIN, Circuit Judge:

■ Appellant Carol Quijano filed charges against her employer, the University Federal Credit Union, with the Equal Employment Opportunity Commission (EEOC) in 1975. The EEOC found reasonable cause to believe that the employer had violated Title VII of the Civil Rights Act of 1964.[1] After all conciliation attempts failed Quijano filed suit in the United States District Court for the Western District of Texas alleging, among other things,[2] a violation

---

1. 42 U.S.C. §§ 2000e (1970) *et seq.*

2. Appellants' alleged causes of action under 42 U.S.C. §§ 1981, 1985 and 1988 (1970) were dismissed because they were not timely filed within the statutory limitations period. This dismissal is not appealed.

of Title VII.[3] Defendant credit union filed a motion to dismiss claiming that the court lacked jurisdiction because the credit union was a "bona-fide private membership club (other than a labor organization) which is exempt from taxation under 501(c) of Title 26" and thus pursuant to section 701(b)(2) of Title VII, 42 U.S.C. § 2000e(b)(2) (1970), was not an employer for purposes of Title VII coverage.[4] The court transformed this motion into one for summary judgment and ruled that defendant was not an employer subject to suit under the Act because it was a bona fide private membership club exempt from taxation. Appellant appeals on the sole issue of whether the credit union is exempt from Title VII coverage under the "private membership club" exception. We find that the court erred in including defendant within that exception and reverse.

The University Federal Credit Union in Austin, Texas is a federally chartered credit union established under the Federal Credit Union Act[5] organized for the purpose of "promoting thrift among its members by affording them an opportunity to accumulate their savings, and to create for them a source of credit for provident and productive purposes."[6] By-Laws, University Federal Credit Union. According to a December 31, 1977 newsletter from the University Federal Credit Union there were approximately 13,700 members of the credit union as of that date.

Membership in the credit union for all those in the field of membership is not particularly difficult to obtain. The credit union requires an entrance fee of one dollar ($1.00), purchase of one share of credit union stock for five dollars ($5.00) and approval of the applicant's completed application by a majority of an executive or membership committee or the board of directors of the credit union. The only investigation done by a membership officer prior to recommending approval is a verification that the applicant is within the field of membership and a check of the credit union's records to determine whether the applicant is a former member whose account was closed due to a negative balance.

The By-Laws of the credit union provide for member ownership and self-governance. Membership meetings are held annually at which directors and credit committee members are elected and reports are received. The credit union is essentially a non-profit organization and is exempt from taxation under section 501(c)(14)(A) of Title 26.

Appellant Quijano, an employee of the credit union at the time charges were filed,[7] alleges in her complaint that the credit union has engaged in and continues to engage in discriminatory practices in violation of section 703 of Title VII.[8] The alleged practices include failure to hire or promote Blacks, Spanish surnamed or female individuals on an equal basis with White males, failure to compensate females or assign job responsibilities to females on an equal basis with males and maintaining job classifications segregated according to race, national origin, or sex. Appellant sought declaratory relief, reinstatement, back pay and injunctive relief for herself and all others similarly situated.

The sole issue presented for review is whether the district court erred in granting summary judgment for the University Federal Credit Union holding that

3. Appellant brought this action as a class action but the court never certified the class and eventually found that the class was too broad to be brought by the appellant even if the action stood on proper statutory ground. The court accordingly limited its decision to Quijano.

4. No challenge is made to the tax exempt status of the credit union. *See* 26 U.S.C. § 501(c)(14)(A) (1970); *LaCaisse Populaire Ste Marie v. United States*, 563 F.2d 505, 507 (1st Cir. 1977).

5. 12 U.S.C. §§ 1751 (1970) *et seq.*

6. *See id.* at § 2(1), 12 U.S.C. § 1752(1).

7. Quijano's employment was terminated between the time charges were filed with the EEOC and the time she filed a complaint in the district court.

8. 42 U.S.C. § 2000e–2 (1970).

the credit union was not an employer within the language of section 701(b)(2) of Title VII.[9] The proposition which guides our analysis of this question is that "Title VII of the Civil Rights Act of 1964 is to be accorded a liberal construction in order to carry out the purposes of Congress to eliminate the inconvenience, unfairness and humiliation of racial discrimination." *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421, 425 (8th Cir. 1970). *Accord, Rogers v. EEOC*, 454 F.2d 234 (5th Cir. 1971), *cert. denied*, 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). The statute's definition of "employer" is entitled to similar liberal construction. *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389 (8th Cir. 1977).

The item that particularly attracts our attention here is the meaning that shall be given to one of the exemptions from Title VII's definition of employer. Section 701(b)(2) of Title VII specifically exempts "a bona fide private membership club . . . which is exempt from taxation under section 501(c) of Title 26"[10] from its definition of employers and hence from coverage by Title VII. The precise definition of this term takes on particular significance to the parties before the court in this case for if we interpret it to include the credit union, as did the district court, then appellant Quijano's appeal is due to be denied. If, however, we find that a credit union is not a private membership club then the district court's summary judgment in favor of the credit union is to be reversed and Quijano may proceed with her case in the district court.

One rarely abandons the path of logic and commonsense when Webster is consulted for the precise meaning of a term. In reference to the type of club suggested by the section 701(b)(2) exemption Webster's Third International Dictionary of the English Language offers the following definition at page 430:

> club—an association of persons for social and recreational purposes or for the promotion of some common object (as literature, science, political activity) usually jointly supported and meeting periodically, membership in social clubs usually being conferred by ballot and carrying the privilege of use of the club property.[11]

The common understanding of the term "club" is reinforced by Webster's definition. The adjectives "bona fide", "private" and "membership", included in the statute serve to indicate the more limited type of club sought to be exempted by the narrow exception in the statute. These modifiers suggest that, in order to be exempt from coverage by Title VII, an association of persons for social or recreational purposes or for the promotion of some common literary, scientific or political objective must also be legitimate (as opposed to sham), private (as opposed to public) and must require some meaningful conditions of limited membership.[12]

Most of the cases dealing with a private club exemption from the Civil Rights Act of 1964 deal with an interpretation of Title II of that Act which exempts "a private club or other establishment not in fact open to

9. 42 U.S.C. § 2000e(b)(2) (1970).

10. *Id.*

11. Legal dictionaries give a similar definition:
    Club. A voluntary, incorporated or unincorporated association of persons for purposes of a social, literary, or political nature or the like.
    Black's Law Dictionary 322 (4th ed. 1951); *see* Bouvier's Law Dictionary 507 (3d ed. 1914).

12. The phrase, "which is exempt from taxation under section 501(c) of Title 26", limits the exempted class of private membership clubs even further of course. "Clubs organized and operated exclusively for pleasure, recreation, and other nonprofit purposes" are exempted from taxation under section 501(c)(7) of Title 26. "Credit unions without capital stock organized and operated for mutual purposes and without profit" are exempted from taxation under section 501(c)(14)(A) of Title 26. As noted previously, the tax exempt status of the University Federal Credit Union is not really at issue in this case. *See* note 4 *supra.* Congress' failure to be more specific in its reference to section 501(c), however, has allowed the credit union to raise the issue of whether such organizations, which are clearly exempt from taxation under section 501(c), may also be "private membership clubs" and therefore not employers under Title VII, 42 U.S.C. § 2000e(b)(2).

the public" from the statutory prohibition against discrimination in access to places of public accommodation. Civil Rights Act of 1964, Title II, §§ 201(a) and (e), 42 U.S.C. §§ 2000a(a) and (e) (1970); *see, e. g., Tillman v. Wheaton-Haven Recreation Association*, 410 U.S. 431, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973); *Moose Lodge v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Daniel v. Paul*, 395 U.S. 298, 89 S.Ct. 1697, 23 L.Ed.2d 318 (1969); *Olzman v. Lake Hills Swim Club, Inc.*, 495 F.2d 1333 (2d Cir. 1974); *United States v. Central Carolina Bank and Trust Company*, 431 F.2d 972 (4th Cir. 1970); *Nesmith v. Young Men's Christian Association of Raleigh*, 397 F.2d 96 (4th Cir. 1968); *United States v. Trustees of Fraternal Order of Eagles, Milwaukee*, 472 F.Supp. 1174 (E.D.Wis.1979); *Smith v. Young Men's Christian Association of Montgomery*, 316 F.Supp. 899 (M.D.Ala.1970), *modified as to relief only*, 462 F.2d 634 (4th Cir. 1972). Not one of these cases held that the organization in question was a private club exempt from coverage of Title II.

The strict applicability of this case law to an issue concerning a Title VII definition and its import for a credit union is open to question. At least one court has held that the class of organizations exempted by the "private club" language in Title II and by the very precise and limited exception in Title VII should be the same. *See Mills v. Fox*, 421 F.Supp. 519, 523 (E.D.N.Y.1976). It is clear, however, that if the exemptions are not intended to apply to precisely the same group of clubs, the Title VII exemption certainly applies to the narrower group. *Compare* 42 U.S.C. § 2000a(e) *with* 42 U.S.C. § 2000e(b)(2). Given the burden of proof that must be shouldered by the credit union, *see Nesmith v. Young Men's Christian Association*, 397 F.2d 96, 101 (4th Cir. 1968), and the repeated failure of swim clubs and YMCA's to meet the burden of

the arguably broader Title II exception, the credit union's difficulty in proving that it falls within the Title VII exception appears to be insuperable.

Yet in its attempt to meet this burden the credit union has cited the court to only one case in which any organization has been found to be exempt from Title VII coverage under section 701(b)(2). In a Southern District of New York case, *Barrister v. Stineberg*, 1 E.P.D. ¶ 9806 (S.D.N.Y.1967), a discharged employee's suit against a private hospital was dismissed for lack of jurisdiction because the court found the defendant, Mount Sinai Hospital, to be "a private membership corporation exempt from federal taxation under 26 U.S.C. § 501(c)." The court in *Barrister* apparently misread the statute and took it to exempt certain "private membership corporations" rather than "private membership clubs." While private membership clubs may be incorporated, not all private membership corporations are necessarily clubs. The court's misreading of the statute alone severely weakens any precedential value to be accorded to *Barrister*.[13]

Other considerations indicate that, notwithstanding the rather isolated finding that Mount Sinai Hospital is a private membership corporation, this court should not find that a federally chartered credit union is exempt from Title VII coverage under a private club exception. We agree with the assessment made by the Sixth Circuit in examining the applicability of tax exempt status to so-called "automobile clubs."

It is thought that there must be at least some sort of commingling of members to constitute a club which is exempted by subsection 9 of section 101 of the Internal Revenue Code [now 26 U.S.C. § 501(c)(7)].

\*     \*     \*     \*     \*     \*

---

13. None of the other cases cited by the parties or uncovered by this court's research, which deal directly with interpretation of section 701(b)(2) of Title VII, 42 U.S.C. § 2000e(b)(2), hold organizations to be private membership clubs under the statute. *See Fesel v. Masonic Home of Delaware, Inc.*, 428 F.Supp. 573 (D.Del.1977) (retirement home did not fall with-

in private membership club exemption under Title VII); *Mills v. Fox*, 421 F.Supp. 519, 523 (E.D.N.Y.1976) (nursing home is not a private club in any sense of the word); *United States v. Medical Society of South Carolina*, 298 F.Supp. 145 (D.S.C.1969) (Roper Hospital of Charleston is not exempt from Title VII coverage under the private club exception).

The members of these two automobile clubs certainly did not commingle. Neither club had a club house, but only an office for the transaction of its business, not designed for meetings of the entire membership. There was only an annual meeting for members, attended but by a few, to elect directors of the Chattanooga club and trustees for the Warren club. Obviously in paying the price for original membership and in subsequently paying $10 annual dues, no person had in mind that he would associate personally with others for any social, civic, political, business, or any other purpose. He was merely banding with other people to purchase at a reduced cost services in connection with the use of his automobile. These services to members were performed entirely by paid employees. Amounts expended by the clubs for general welfare service were quite insignificant when compared to expenditures for rendering services to club members.

Chattanooga Auto Club v. Commissioner of Internal Revenue, 182 F.2d 551, 554 (6th Cir. 1950). Of course, credit unions are exempt from federal taxation under another subsection of the statute. See 26 U.S.C. § 501(c)(14)(A). That tax exemption, however, is not an indication that Congress intended credit unions to be considered private membership clubs for purposes of exemption from Title VII coverage. Credit unions, however useful they may be, exist for purely mercantile purposes and although they may be organized on a nonprofit basis, members join credit unions in search of profits on their investments. Like the "auto clubs", credit unions are not clubs in any sense of the word. See also Mills v. Fox, 421 F.Supp. 519, 523 (E.D.N.Y. 1976).

Finally, in light of Congress' effort to eliminate the affects of discrimination in almost every facet of society, it would indeed be incongruous for this court to determine that credit unions were meant to be exempted from a responsibility not to discriminate in employment practices. The intent of Congress to prohibit credit unions from discriminating in home financing is clearly set forth in section 805 of the Federal Fair Housing Law, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3605 (1970). Surely Congress could not have intended for credit unions to be prohibited from discrimination in credit policies but not in employment practices. In fact the National Credit Union Administration acknowledges coverage of credit unions by Title VII in its Manual of Laws Affecting Federal Credit Unions published in June 1978. Part 9–B of that Manual states, "The provisions of the EEOA [Title VII] apply to any credit union which has 15 or more employees for each working day in each of twenty or more calendar weeks in a calendar year." The credit union's position that it is not an employer within Title VII's definition of that term because of its claimed status as a "bona fide private membership club", is patently without merit. The award of summary judgment is reversed and the cause is remanded to the district court.

REVERSED and REMANDED.