**Nahir D. ROMAN, f/k/a Nahir D. Vazquez, Plaintiff**

v.

**CONCHARTY COUNCIL OF GIRL SCOUTS, INC., Defendant**

**No. 4:99–CV–111 (CDL).**

United States District Court, M.D. Georgia, Columbus Division.

March 1, 2002.

---

William Z. Messer, Robert J. Varley, Montgomery, AL, for Plaintiff.

Deron Ray Hicks, George Golden Boyd, Jr., Columbus, GA, for Defendant.

## *ORDER*

LAND, District Judge.

Before the Court is Defendant Concharty Council of Girl Scouts, Inc.'s motion for partial summary judgment. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the Court grants Defendant's motion.

## *PROCEDURAL HISTORY*

On June 19, 1995, Plaintiff, a Hispanic female, was hired by Defendant, the Concharty Council of Girl Scouts, Inc. ("Council"), to assume the position of Regional Director. On May 29, 1997, the Council terminated Plaintiff's employment. Subsequent to her discharge, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. On February 23, 1999, Plaintiff received her Notice of Right to Sue from the Equal Employment Opportunity Commission. On May 19, 1999, Plaintiff filed suit in the United States District Court for the Northern District of Georgia against the Council pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), Title I of the Americans with Disabilities Act (ADA), and 42 U.S.C. § 1981. On August 10, 1999, the case was transferred to the United States District Court for the Middle District of Georgia, Columbus Division. Defendant filed its motion for partial summary judgment on September 29, 2000, contending that it is exempt from coverage under Title VII and the ADA because it is a "bona fide private membership club." Defendant's motion appears to present a question of first impression in the Eleventh Circuit—whether a Girl Scouts organization is a "bona fide private member-

ship club" for purposes of Title VII and the ADA.[1]

## DISCUSSION

Title VII exempts from its coverage "bona fide private membership clubs" which are exempt from taxation under Section 501(c) of Title 26 of the United States Code. *See* 42 U.S.C. § 2000e(b)(2).[2] Likewise, the ADA exempts from its coverage a "bona fide private membership club" that is exempt from taxation under Section 501(c) of Title 26. *See* 42 U.S.C. § 12111(5)(B)(ii).[3]

It is undisputed that Defendant is a tax exempt organization under Section 501(c)(3) of Title 26. The issue for determination therefore is whether Defendant is a "bona fide private membership club" under Title VII and the ADA.

Although the Court has been unable to locate any federal appellate precedent deciding whether a Girl Scouts organization is a "bona fide private membership club," the Court finds that at least one Circuit Court has held that the Boy Scouts constituted a bona fide private club for purposes of exemption from Title II of the Civil Rights Act of 1964. *See Welsh v. Boy Scouts of America*, 993 F.2d 1267 (7th Cir.1993).[4] In *Welsh*, the United States Court of Appeals for the Seventh Circuit noted that four factors "strongly support the conclusion that the Boy Scouts indeed is a private club entitled to exception from Title II." *Welsh*, 993 F.2d at 1277.

The four factors found by the court in *Welsh* to support its finding that the Boy Scouts organization was a "private club" for Title II purposes were selectivity in membership, historically unique existence, distinct purpose, and non-profit status. The Seventh Circuit's application of those factors to the Boy Scouts is instructive for this Court in its analysis of whether the Defendant in the case *sub judice* is a "bona fide private membership club."

First, the court in *Welsh* found that the Boy Scouts were selective in their membership requirements. *Id.* at 1276. The court noted that "[a]lthough the Scouts intentionally admit a large number of boys from diverse backgrounds, admission to membership is not without the exercise of sound discretion and judgment. This is evident from the Constitution and By-laws as well as the Boy Scouts Oath and Scout Law." *Id.* In particular, the court noted that "the Oath evidences both a *plan* and

---

1. Based upon the Court's research, it appears that the issue of whether a Girl Scouts organization is a "bona fide private membership club" has not been decided by any Circuit Court of Appeals or the Supreme Court.

2. Section 2000e provides, in part:

    The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include ... a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26 ....

3. Section 12111 provides, in part:
    The term "employer" does not include ... a bona fide private membership club (other than a labor organization) that is exempt from taxation under section 501(c) of Title 26.
    42 U.S.C. § 12111(5)(B)(ii).

4. In a decision issued June 28, 2000, the United States Supreme Court recognized the Boy Scouts as a "private, not-for-profit organization engaged in instilling its system of values in young people" in reaching its determination that New Jersey's public accommodations law violated the Boy Scouts' First Amendment right of expressive association. *Boy Scouts of America v. Dale*, 530 U.S. 640, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000).

    42 U.S.C. § 2000e(b)(2).

*purpose* of selectivity." *Id.* (emphasis in original).

Second, the court considered the history of the club. *Id.* at 1277. The court noted that the Scouting Organization was founded in 1907 and has followed the same basic tenets since that time. *Id.* In this respect, the court noted that the "very purpose of the private club exception is to preserve the right of truly private organizations to maintain their unique existence." *Id.*

Third, the court considered the purpose of the organization. The court noted that the purpose of the Scouts is to train young boys to live according to the principles of duty to God, to country, to others, and duty to one's self. *Id.*

Finally, the fourth factor considered by the court was the non-profit status of the Boy Scouts. *Id.*

Applying these four factors to the Boy Scouts, the Seventh Circuit found the Boy Scouts to be a private club. The court rejected the argument that "because the Boy Scouts have five million members, and are open to 'as many boys as would join' it is neither selective nor private." *Id.* As explained by the court, "Congress did not intend to condition the private club exclusion from Title II ·on the popularity of the organization." *Id.; see also E.E.O.C. v.*

*Chicago Club,* 86 F.3d 1423, 1435 (7th Cir. 1996) ("The size of an organization is not, without more, probative of its privateness.").

■ Plaintiff in the case *sub judice* attempts to distinguish *Welsh,* which involved the interpretation of Title II, by arguing that the exemption for a bona fide private membership club under Title VII and the ADA should be read in a much more restrictive fashion than the exemption for a private club under Title II. Plaintiff's argument is based on the proposition that the constitutional right to association (as regulated by Title II) is much broader than any right associated with employment practices (as regulated by Title VII and the ADA).[5] While Plaintiff's analysis of the broad constitutional implications of those Acts may be correct, it is inapposite to the question of whether the term "private club" under Title II and the term "private membership club" under Title VII and the ADA have essentially the same meaning. Nothing in the text of either Title II, Title VII or the ADA suggests the broad distinction advocated by Plaintiff. With the exception of minor differences, there is no functional distinction between a "private club" under Title II and a "private membership club" under Title VII and the ADA.[6]

5. Plaintiff seems to suggest that it is more legitimate to exempt certain private organizations from public accommodation laws than it is to exempt them from employment discrimination laws. The Court acknowledges that Title VII and the ADA are broad remedial statutes adopted by Congress to address, in part, discrimination in employment on the basis of race, sex, national origin, and disability. Although it may have been Congress's intent to cast a wide net in its adoption of Title VII and the ADA, it nevertheless carved out specific exemptions for certain employers. For example, employers with less than fifteen employees are exempt from Title VII and the ADA. *See* 42 U.S.C. § 2000e; 42 U.S.C. § 12111. Similarly, Congress established a specific exemption under Title VII and the

ADA for "bona fide private membership clubs." Therefore, it is clear that Congress intentionally placed limitations on the reach of Title VII and the ADA. Given Congress's clear intention and willingness to place limitations on the scope of Title VII and the ADA, Plaintiff's argument that the broad remedial scope of Title VII and the ADA authorizes finding a meaningful distinction between "private club" under Title II and "private membership club" under Title VII and the ADA is unpersuasive.

6. There are two additional requirements under Title VII and the ADA that are not in Title II:(1) that the private club be a tax exempt organization, and (2) that labor organizations are specifically excluded from the exemption.

The Court finds the analysis of the Seventh Circuit in *Welsh* helpful in resolving the issue of whether the Defendant in this case is a "bona fide private membership club." Therefore, the Court will apply the factors outlined by the Seventh Circuit in *Welsh* to the case *sub judice*. In support of its motion for partial summary judgment, Defendant has submitted the affidavit of Debra Cabelero, the Executive Director of the Council. In her affidavit, Ms. Cabelero has described the membership requirements of the Girl Scouts, the organization's history, and the organization's purpose. The application of the factors set forth in *Welsh* to these facts establishes that the Defendant is a "bona fide private membership club."

First, the membership requirements for participation in the Girl Scouts organization are almost identical to the same selective membership requirements for participation in the Boy Scouts that were approved by the Seventh Circuit Court of Appeals in *Welsh*. Participation in the Girl Scouts is available only to girls who are between the ages of 5 to 17 years of age. This threshold membership requirement is selective in two respects: age and gender. Moreover, participants in the Girl Scouts are required to live by the Girl Scout Promise and abide by the Girl Scout Law. The Girl Scout Promise states as follows:

On my honor, I will try:
To serve God and my country,
To help people at all times,
And to live by the Girl Scout Law.

The Girl Scout Law provides:
I will do my best to be
honest and fair,
friendly and helpful,
considerate and caring,
courageous and strong,
and responsible for what I say and do,
and to respect myself and others,
respect authority,

use resources wisely,
make the world a better place,
and be a sister to every Girl Scout.

As in *Welsh*, the Girl Scout Promise and Girl Scout Law "offer[ ] a clear statement of the beliefs, principles and purpose of the Scouts, i.e., to nurture belief in God, respect for one's country and [her] fellow [sister], and being of good moral character." *Welsh*, 993 F.2d at 1276. In fact, the Girl Scout Promise and Girl Scout Law are virtually identical in content to the Boy Scout Oath at issue in *Welsh*, which the Seventh Circuit Court of Appeals found to be strong evidence of selectivity in membership. *Id.* Participants in the organization are also required to pay an annual membership fee.

As in *Welsh*, the Court has also considered the history of the Girl Scouts organization. The Girl Scouts organization was founded in 1912 in Savannah, Georgia, and incorporated as a national organization in 1915. By 1920, the Girl Scouts had established a handbook, constitution, and by-laws. In 1917, the first troop for disabled girls was established and that same year registration of African–American girls began. By the end of the 1920s, registration of Native American girls had started. Since its founding, the Girl Scouts organization has consistently strived as an organization to include girls of all nationalities and races among its membership.

An analysis of an organization's history is helpful in determining whether the organization and its membership requirements were established as subterfuge to avoid coverage of Title VII or the ADA. In this respect, it is clear from its long history that the Girl Scouts was not founded as a vehicle designed to evade the requirements of Title VII or the ADA. The organization was founded well before the passage of either Title VII or the ADA. Moreover, the organization—notwithstanding its status as a private club—has con-

sistently strived to diversify its membership.

The Girl Scouts was founded in 1912 by Juliette Gordon Lowe. It was her intent to create an organization that would bring girls out of their cloistered home environments to serve in their communities and to experience the outdoors. This founding purpose—to develop self-worth, strong values and a social conscience—has remained the core tenet of the organization to the present. The Girl Scouts achieve this purpose through a variety of educational programs, community service opportunities, and athletic and outdoors activities. There are five age levels in Girls Scouts. Girls ages 5 to 6 may participate in Daisy Girl Scouts. Girls ages 6 to 8 may participate in Brownie Girl Scouts. Girls ages 8 to 11 may participate in Junior Girl Scouts. Girls ages 11 through 14 may participate in Cadette Girl Scouts. Finally, girls ages 14 through 17 may be Senior Girl Scouts. Different programs and activities are available and designed for the different age levels.

Considering the four *Welsh* factors (selectivity in membership, historically unique existence, distinct and legitimate purpose, and non-profit status), the Court finds that Defendant is clearly a "bona fide private membership club" for purposes of Title VII and the ADA. As noted by the Seventh Circuit Court of Appeals in *EEOC v. Chicago Club*, 86 F.3d 1423 (7th Cir.1996), "[a] private club is a group of individuals who imagine the membership as a personification of whatever priorities and interests the club professes to embrace." *EEOC v. Chicago Club*, 86 F.3d at 1437. The "priorities and interests" the Girls Scouts organization professes to embrace are clearly set forth in the Girl Scout Promise and Girl Scout Law and serve to create a "shared understanding" among all Girl Scouts of the organization's founding purpose. Those girls who agree to embrace the laudable goals of the Girls Scouts may become a member of the organization; those who do not publicly embrace those goals do not become members. To find that Defendant is not a "bona fide private membership club" would require the Court to disregard the plain meaning of the statute and ignore Congress's intent.[7]

■ Although the Eleventh Circuit Court of Appeals has never directly addressed the issue of whether the Girl Scouts is considered a "bona fide private membership club" for purposes of Title VII and the ADA, it has addressed the issue of what constitutes a "bona fide private membership club." In *Quijano v. University Federal Credit Union*, 617 F.2d 129 (5th Cir.1980)[8], the Court held that for an organization to qualify as a "bona fide private membership club," the organization must be: (1) an association of persons for social or recreational purposes or for the promotion of some literary, scientific or political objective; (2) legitimate; (3) private; and (4) require some meaning-

---

7. The Court does not think it necessary to research legislative history to discern Congress's intent on this issue. It is apparent from a plain reading of the statute. However, it is interesting to note that during the floor debate on Title V of the Civil Rights Act of 1964, Representative George Meader was asked whether an exemption for private clubs from Title V would include the Girl Scouts, among other similar organizations. Representative Meader replied that the term "private club" would encompass such organiza-

tions. 110 Cong. Rec. 2296 (Feb. 6, 1964). The Court also notes that the Girl Scouts organization is expressly excluded from coverage with respect to federal regulations that govern discriminatory activities of educational programs which receive federal financial assistance. *See* 7 C.F.R. § 15a.14; 10 C.F.R. § 1040.27; 34 C.F.R. § 106.14.

8. This 1980 decision of the Fifth Circuit constitutes binding Eleventh Circuit precedent.

ful conditions of limited membership. These factors are remarkably similar to those described by the Seventh Circuit in *Welsh.*

Based upon the factors described in *Quijano* and *Welsh,* the Court finds that the undisputed facts establish that Defendant is a "bona fide private membership club" for purposes of Title VII and the ADA.

## CONCLUSION

Defendant is a "bona fide private membership club." It is selective in its membership. It has a distinctive and historical purpose. It is a tax exempt organization under Section 501(c)(3) of Title 26 of the United States Code. As a "bona fide private membership club," Defendant is exempt from the requirements of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act. Accordingly, Defendant's motion for partial summary judgment is GRANTED.[9]

---

**9.** This ruling has no effect on Plaintiff's 42 U.S.C. § 1981 claim which remains pending. The Court expresses no opinion as to whether the "bona fide private membership club" exemption applies to § 1981 claims.