**Harry Daniel HICKS, Appellant,**

v.

**ABT ASSOCIATES, INC., Appellee.**

**No. 75–1425.**

United States Court of Appeals, Third Circuit.

Argued Oct. 3, 1977.

Decided Jan. 19, 1978.

---

Seitz, Chief Judge, filed a specially concurring opinion.

Martha Hartle Munsch, Pittsburgh, Pa., for appellant.

Michael H. Miller, George Michaels, P. C., Fred B. Wilcon, Michaels, Adler & Wilcon, Boston, Mass., for appellee.

Before SEITZ, Chief Judge, and BIGGS and HUNTER, Circuit Judges.

HUNTER, Circuit Judge:

This appeal is from an order of the district court granting summary judgment to defendant in an action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* The complaint alleges that defendant discriminated against plaintiff on the basis of race and sex, and retaliated against him for seeking administrative remedies for discrimination. The district judge ruled that the claim for sex discrimination was barred since no charge of sex discrimination had been filed with the Equal Employment Opportunity Commission (EEOC). He also concluded that there were no genuine issues of material fact supporting liability for either sort of discrimination or for retaliation. Since we find genuine issues of material fact in the record both on liability and on whether the district court should hear the claim based on sex discrimination, we vacate the summary judgment and remand.

I

Plaintiff Harry D. Hicks, a white male, was employed by defendant, Abt Associates, Inc., as a supervisor of housing evaluation operations from sometime late in 1972 until his termination on July 27, 1973.

On August 16, 1973, Hicks filed a "Charge of Discrimination" form with the EEOC. There are two places on the form where the nature of the discrimination being claimed is to be indicated. At the top of the form are several boxes, each labeled with a type of discrimination. Hicks checked the box labeled "race or color," and made no mark in the other boxes, including the one labeled "sex." At the middle of the form is a blank space where the charging party is told to "[e]xplain what unfair thing was done to you and how other persons were treated differently." Hicks wrote a statement alleging disparate treatment and a discriminatory discharge.[1]

On November 16, 1973, a second charge was filed with the EEOC. Again Hicks checked only the box for race discrimination. The statement of explanation indi-

---

1. Hicks's statement was as follows:

    The above named Respondent has discriminated against me because of my race, caucasian, in violation of Title VII because I at-tempted to make accurate criticisms and evaluations of a Negro subordinate, by subjecting me to disparate treatment and ultimately discharging me.

cated that Hicks had contacted various government agencies after being informed that he would be discharged, and that his eventual termination was motivated by the company's dissatisfaction with this course of action.

The EEOC, on April 3, 1974, issued its determination that no reasonable cause existed to believe that Hicks had been the victim of race discrimination and sent Mr. Hicks a notification of his statutory right to sue.[2]

After numerous unsuccessful attempts to obtain counsel, plaintiff filed a *pro se* complaint against Abt Associates in the District Court for the Western District of Pennsylvania on June 24, 1974. On that date, the court granted Hicks's motion to proceed in forma pauperis. On June 26 a motion for appointment of counsel under Section 706(f)(1) of the Act, 42 U.S.C. § 2000e-5(f)(1), was denied.

The complaint alleged that various acts of defendant discriminated against plaintiff on the basis of his race and sex, in violation of section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1). It also alleged that his termination was in part based on his attempts to secure an end to such discrimination in various government agencies, in violation of section 704(a), 42 U.S.C. § 2000e-3(a).

Defendant moved for summary judgment based on its deposition of plaintiff and several exhibits. Plaintiff, unrepresented by counsel as he had been at the time of the deposition, put no evidence into the record. He only moved to "dismiss" the defendant's motion by arguing that he had not been permitted to question himself when he was deposed by defendant and that all relevant documents were in defendant's possession.

The district court granted defendant's motion. Two independent reasons were given for the summary judgment. First, the claim with respect to sex discrimination was jurisdictionally barred by statute, since Hicks had not filed such a charge with the EEOC. Second, there were no genuine issues of material fact to preclude entry of judgment for defendant with respect to all the claims alleged in the complaint.

Plaintiff appeals the judgment and the denial of appointed counsel in the district court.

## II

The district court held that it did not have jurisdiction over Hicks's claims of sex discrimination because a charge of such discrimination had not been filed with the EEOC. The filing of a charge with the Commission by an aggrieved party and the receipt of a notice of the right to sue are jurisdictional prerequisites to a civil action under Title VII. 42 U.S.C. §§ 2000e-5(e), 2000e-5(f); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398 (3d Cir. 1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 1041, 50 L.Ed.2d 753 (1977).

The purpose of the filing requirement is to initiate the statutory scheme for remedying discrimination. Once the EEOC receives a charge, it is required to give notice to the employer and to make an investigation to determine whether there is reasonable cause to believe that the charge is true. If cause is found, the EEOC must attempt to use informal means of achieving a settlement of the dispute. If no reasonable cause is found, or if reconciliation attempts prove futile within a certain time, the charging party is issued a notice of his right to bring a civil action. Only after such a letter is received is a civil action permitted. 42 U.S.C. § 2000e-5; *Fekete v. United States Steel Corp.,* 424 F.2d 331 (3d Cir. 1970). Thus, the effect of the filing requirement is essentially to permit the EEOC to use informal, non-judicial means of reconciling the differences between the charging party and an employer. *See Ostapowicz v. Johnson Bronze Co.,* 541 F.2d at 398.

The record in this case shows that the documents filed with the EEOC by plaintiff pointed only to race discrimination as a

**2.** *See* U.S.C. § 2000e-5(f)(1) (1970).

cause of his discharge and disparate treatment. We do not agree with the district court that this fact precludes jurisdiction over the sex discrimination claims alleged in Hicks's complaint and explained in his deposition. There are at least two possible bases for jurisdiction which appear in the record and which cannot be rejected by summary judgment at this point.

■ First, the record contains evidence which creates a genuine issue of whether Hicks reasonably attempted to amend his charge to include sex discrimination, but the EEOC improperly refused to accept the amendment. We believe that such circumstances would create an excuse for the failure to file a sex discrimination charge.

Under the regulations of the EEOC, "[a] charge may be amended . . . to clarify and amplify allegations made therein. . . ." 29 C.F.R. § 1601.11(b) (1976). Plaintiff during his deposition was asked whether the two charges he filed with the EEOC were all the pleadings filed with that agency. Hicks answered that he had tried to incorporate a sex discrimination allegation subsequent to his original charges, that he "thought it was incorporated."[3] Later he indicated that he had tried to make further charges, but that the EEOC would not accept them.[4]

■ The record does not indicate whether the attempt to incorporate sex discrimination in the EEOC charge was made within the required 180-day statutory period.[5] Our resolution of the amendment issue in this case does not depend on whether the amendment would have been filed within that time period. For convenience, however, we will first consider the issue under the assumption that the attempt to incorporate a sex discrimination claim came within 180 days of the alleged violation by Abt Associates. With that assumption, the deposition raises a genuine issue of whether the EEOC refused to accept a timely amendment, and thus violated its own regulations.

Courts have held that the failure of the EEOC to give notice of a charge to the employer involved or its failure to attempt reconciliation, both of which are required by section 706(b) of Title VII, 42 U.S.C. § 2000e–5(b), does not bar a civil suit by the charging party. See, e. g., Waters v. Heublein, Inc., 547 F.2d 466, 468 (9th Cir. 1976); Thornton v. East Texas Motor Freight, 497 F.2d 416, 424 (6th Cir. 1974); Dent v. St. Louis-San Francisco Railway Co., 406 F.2d 399, 402–03 (5th Cir. 1969). These decisions are based on the concept that, once the Commission has been given its chance to reconcile the parties informally, the individual's right to bring a civil action becomes an indispensable part of the enforcement scheme of Title VII. This right should not be defeated by the EEOC's failure to comply with its statutory obligations. See Waters v. Heublein, Inc., 547 F.2d at 468; Thornton v. East Texas Motor Freight, 497 F.2d at 424; Beverly v. Lone Star Lead Construction Corp., 437 F.2d 1136, 1138 (5th Cir. 1971); McAdams v. Thermal Industries,Inc., 428 F.Supp. 156, 159–60 (W.D.Pa. 1977); Fesel v. Masonic Home of Delaware, Inc., 428 F.Supp. 573, 576 (D.Del.1977); cf. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (failure of EEOC to find reasonable cause does not affect right to bring civil suit); Fekete v. United States Steel Corp., 424 F.2d 331, 336 (3d Cir. 1970) (same).

We believe that the same result should follow if it is shown that the EEOC improperly refused to accept an amendment to a charge. Once the charging party has done all that he can reasonably do to amend his charge in accordance with the Commission's regulations, the statutory policy of providing the EEOC with an opportunity to reconcile the grievance has been fulfilled. The failure of the EEOC to accept the amendment is similar to the agency's failure to give the defendant notice of a charge. Both are the result of the failure of the agency to follow the statute and its own regulations. The individual employee

---

3. Joint Appendix at A–40.

4. Id. at A–43.

5. 42 U.S.C. § 2000e–5(e) (1970).

should not be penalized by the improper conduct of the Commission. *See generally McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Ecology Center of Louisiana, Inc. v. Coleman,* 515 F.2d 860, 864–67 (5th Cir. 1975); K. Davis, Administrative Law of the Seventies § 20.-01–2 (1976).

Defendant has argued that any amendment by plaintiff would have been made after the 180-day limit for filing charges and was thus properly refused by the EEOC. We believe, however, that the record raises a genuine issue of whether the amendment would have related back to the original filing date and thus should have been accepted even if filed late.

The regulations of EEOC incorporate the well known concept of an amendment's relating back to the date of the original complaint. "[A]mendments alleging additional acts which constitute unlawful employment practices directly related to or growing out of the subject matter of original charge will relate back to the original filing date." 29 C.F.R. § 1601.11(b) (1976). *Cf.* F.R.Civ.P. 15(c). In determining the content of the original complaint for purposes of applying this regulation, we keep in mind that charges are most often drafted by one who is not well versed in the art of legal description. Accordingly, the scope of the original charge should be liberally construed. *See, e. g., Tillman v. City of Boaz,* 548 F.2d 592, 594 (5th Cir. 1977).

Hicks's charge filed with the Commission alleges that he was discriminated against on the basis of race by being subjected to "disparate treatment" and later discharged. His civil complaint contains two sorts of allegations of sex discrimination: the company subjected him to stricter conditions of employment than it did women doing similar work, and disparate salary levels were based on sex. The deposition indicates that the working condition allegation is based on the treatment of Hicks compared to that of three female supervisors.[6] Two of the three supervisors referred to were black.

One instance of disparate salary levels is a comparison of his salary with that of a black female payment supervisor.[7]

At least these instances of sex discrimination alleged in the complaint arise from the same acts which support claims for race discrimination. This evidence in the record raises a genuine issue whether the amendment which Hicks says he tried to have incorporated in his charge would have been "directly related to" the facts in the original charge and thus would have related back to the original filing date. If relation back were not permitted in these circumstances, a charging party might be faced with the often difficult burden of analyzing without the benefits of any discovery his employer's motivation for an action immediately after that action had occurred. *See generally Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). Thus, even if the amendment to incorporate sex discrimination would have been filed after the 180-day period, the question of the court's jurisdiction over Hicks's sex discrimination claims cannot be resolved given the present state of the record.

The second possible basis for jurisdiction is the scope of the civil action following a notice of the right to sue from the EEOC. Even assuming that Hicks did not attempt to amend his original charge, we find that the district court did not apply the correct standard in holding that it did not have jurisdiction over the sex discrimination claim. The court ruled that because Hicks did not file a charge of sex discrimination with the EEOC, there was no jurisdiction over such claims.

This case is not one in which there was no charge filed with the EEOC. *See, e. g., Greene v. Carter Carburetor Co.,* 532 F.2d 125 (8th Cir. 1976). Here Hicks filed a timely charge alleging race discrimination in rather broad terms. As such, the Commission had notice of a complaint and could commence its investigatory and conciliatory

---

6. Joint Appendix at A–66 to A–67, A–122.

7. *Id.* at A–53 to A–57.

functions. Once a charge of some sort is filed with the EEOC, this court has held that the scope of a resulting private civil action in the district court is "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . .." *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d at 398–99. *Accord, Gamble v. Birmingham Southern Railway Co.,* 514 F.2d 678, 687–88 (5th Cir. 1975); *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 538 F.2d 164, 167–78 (7th Cir.) (en banc), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976).

Defendant argues that cases such as *Ostapowicz* involved situations in which the EEOC in fact reasonably investigated beyond the actual charge filed, and in which the result of the courts' decisions was to allow the new facts uncovered to be included in the civil action. Defendant's interpretation is that the EEOC investigation sets the outer limit to the scope of the civil complaint. In this case, the EEOC's determination after its investigation indicates that the Commission in fact investigated only race discrimination as a result of Hicks's charge.

■ We reject such a limitation. In effect, the defendant asks the court to penalize a plaintiff for the possible misconduct of the EEOC. If the EEOC's investigation is unreasonably narrow or improperly conducted, the plaintiff should not be barred from his statutory right to a civil action. As mentioned above, the purpose of the filing requirement is to allow the EEOC to settle a complaint informally. Defendant does not have a right under the statute to conciliation attempts by the agency. A civil suit will lie even where the EEOC has failed to give defendant notice of the charge or has failed to attempt to reconcile the parties either because of administrative failure or because of its finding of no reasonable cause. *See, e. g., Gamble v. Birmingham Southern Railway Co.,* 514 F.2d at 688–89. Further, defendant has shown no prejudice from expanding the scope of the civil action beyond that of the EEOC investigation. *See, e. g., Fesel v. Masonic Home*

*of Delaware,* 428 F.Supp. 573, 576 (D.Del. 1977).

■ We believe the correct rule for the scope of the civil complaint which may follow a notice of the right to sue from the EEOC, irrespective of the actual content of the Commission's investigation, is that in *Ostapowicz.* This standard is a fair compromise of the interests expressed in Title VII in informal settlement as a preferred method of conflict resolution and the employee's right to a judicial forum once the Commission has finished processing a charge. *See Ostapowicz v. Johnson Bronze Co.,* 541 F.2d at 398–99; *EEOC v. General Electric Co.,* 532 F.2d 359, 364–66 (4th Cir. 1976); *Gamble v. Birmingham Southern Railway Co.,* 514 F.2d at 688–89.

The record presented to the district court in support of defendant's motion for summary judgment contains a genuine issue whether the EEOC investigation reasonably would have included examination of the sex discrimination claims. Defendant points out that the EEOC in fact did not investigate sex discrimination. While it is true that courts should presume the regularity of the EEOC's investigation, *see Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), there is evidence in Hicks's affidavit to rebut this presumption. Plaintiff indicates that he was never contacted by the EEOC investigator and indeed did not know that the investigation was proceeding until the final determination of no reasonable cause had been mailed to him. By not approaching Hicks, the Commission would have violated its own regulations requiring that the charging party "be afforded an opportunity to submit a statement of its position or evidence with respect to the allegations." 29 C.F.R. § 1601.14 (1976). This evidence creates an unresolved issue of the reasonableness of the investigation made by the EEOC. Further, the record contains sufficient evidence to raise a fair inference that Hicks would have told the EEOC investigator that he believed that sex discrimination was a cause of the disparate treatment alleged in his charge. Thus,

an issue is raised whether, if a reasonable investigation had occurred, the EEOC would have been informed of the sex discrimination claims.

A finding that the EEOC would have discovered a claim for sex discrimination in the course of a reasonable investigation does not itself meet the standard of *Osta-powicz.* This evidence merely rebuts the presumption that the scope of the actual investigation is "what can reasonably be expected to grow out of the charge of discrimination." 541 F.2d at 398–99.

The district court must further find that the sex discrimination claims which would have been uncovered were reasonably within the scope of the charge filed with the EEOC. Otherwise, the charging party could greatly expand an investigation simply by alleging new and different facts when he was contacted by the Commission following his charge.

In this case, the charge in broad terms complained of "disparate treatment." As mentioned, there is a close nexus between the facts supporting the claims of race and sex discrimination. The record contains no evidence of the investigatory practices of the agency, and thus no evidence on which the court can conclude whether a reasonable inquiry would have reached Hicks's allegations. Therefore, defendant has not met its burden of showing that there are no genuine issues of material fact regarding the court's jurisdiction over the claim. *See generally Ettinger v. Johnson,* 556 F.2d 692, 696 (3d Cir. 1977).

In summary, there are several genuine issues of material fact in the record which preclude our finding that the district court has no jurisdiction over the sex discrimination claims. If the court eventually finds that the EEOC improperly failed to accept an amendment to Hicks's charge which would have incorporated sex discrimination, there is jurisdiction over those claims. If a reasonable investigation of the charge as filed would have encompassed the sex discrimination claims, again the court should take jurisdiction over that part of plaintiff's complaint.

III

An alternate basis given by the district court for its judgment was that there were no genuine issues of material fact supporting any liability for race or sex discrimination or for a retaliatory discharge. The court referred to the facts given in plaintiff's deposition as being "only an accumulation of rumor, innuendo and conclusory allegation." Although in large part we agree with this characterization by the trial judge, we find that Hicks's deposition does contain some facts which could support a claim of race and sex discrimination. As in all summary judgment motions, all doubts as to the existence of material facts should be resolved against the movant. *Ettinger v. Johnson,* 556 F.2d 692, 696 (3d Cir. 1977); *Lockhart v. Hoenstine,* 411 F.2d 455, 458 (3d Cir.), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969).

The two major elements of plaintiff's complaint are discrimination against him as a white male and retaliation for seeking administrative remedies for such discrimination.

■ Section 703(a)(1) of Title VII provides, in part, that it is unlawful for an employer "to discharge any individual or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of the employee's race, color, or sex. 42 U.S.C. § 2000e–2(a)(1). This section applies on the same terms to discrimination against males. or whites as it does to discrimination against women or racial and ethnic minorities. *See McDonald v. Sante Fe Trail Transportation Co.,* 427 U.S. 273, 279–80, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976) (discrimination against whites); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800–01, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (same); *Diaz v. Pan American World Airways, Inc.,* 442 F.2d 385 (5th Cir. 1971) (discrimination against males).

■ The record presented to the district court in connection with the summary judgment motion contains at least two disputed

factual issues which, if resolved in favor of plaintiff, would support a claim under Title VII. First, there is evidence that Hicks was discriminated against with respect to the hours he was required to work. There were three supervisors in addition to plaintiff. All three were women; two were black. During his deposition Hicks explained that the three were allowed to begin work "anytime they felt like it," as much as an hour after the time when Hicks was required to begin work.[8] One of these supervisors was employed as a payments supervisor and earned a higher wage than Hicks, a housing operations supervisor. There is no indication in the record of the salaries of the other two supervisors; one in charge of the "Enrollment Section" and the other assigned to "Central Records." It is fair inference, nevertheless, that Hicks's and their salaries were approximately the same.[9] Hicks attributes the cause of the different working conditions to either a racial or sexual preference. Although there is no direct evidence in the record on the motivation for the differences among terms of employment, the fact that the only male supervisor was required to work longer hours raises an inference of a preference based on sex. Tied with other evidence in the deposition of a preferential policy toward black employees,[10] the differences in hours raises an inference of racial discrimination as well. There is no evidence in the record for any non-discriminatory reason to explain the differences among terms of employment. Thus, given the scheme for allocating the burdens of proof in a Title VII action outlined by *McDonnell Douglas Corp. v. Green*,[11] plaintiff's evidence if proven at trial could support a claim under Title VII.

Second, the record indicates that one of the disputes between Hicks and defendant leading to his termination was his failure to file a certain report in connection with the company's comprehensive review of the work of its supervisors. Hicks indicates that the three female supervisors also never submitted the required report.[12] This fact alone would not support a Title VII claim for an unlawful termination. Coupled with other evidence of disparate treatment based on a sex or race, however, this evidence raises an issue of a discriminatory discharge.

Neither of these issues can be resolved on the basis of the record as it now stands. They involve questions of the veracity of Hicks's testimony, an issue which only rarely is appropriate for summary judgment, *see Ettinger v. Johnson*, 556 F.2d 692, 695–97 (3d Cir. 1977), and of defendant's motivation, an issue which itself often turns on credibility of witnesses, *see, e. g., Hackley v. Roudebush*, 171 U.S.App.D.C. 376, 520 F.2d 108, 157 (1975).

Section 704(a) of Title VII forbids an employer from discriminating against any of his employees "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, . . . or participated in any manner in an investigation . . . under this subchapter." 42 U.S.C. § 2000e–3(a).

Hicks's deposition raises an issue of whether he was discharged at least in part as a response to his contacting the Department of Housing and Urban Development (HUD) about alleged discriminatory practices of defendant. During his dispute with Abt Associates over several matters, Hicks

---

**8.** *Id.* at A–66 to A–67.

**9.** After noting the salary difference between himself and the payments supervisor, and among other employees at different supervisory levels, Hicks concluded that he could not think of any other disparate salaries. *Id.* at A–62. Also, there are several references to the similar job duties among the supervisors. *E. g., id.* at A–33 to A–35, A–56, A–121 to A–122.

**10.** *Id.* at A–69 to A–70.

**11.** Once plaintiff has established a prima facie case of discrimination, the burden shifts to defendant to articulate a legitimate non-discriminatory reason for its action. If defendant meets this burden, the plaintiff must be afforded an opportunity to show that defendant's explanation is mere pretext. 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**12.** *Id.* at A–121 to A–122.

had occasion to contact HUD, which provided funding for the project on which he was employed, the National Labor Relations Board, and finally the EEOC. From the evidence in the record, at least the contact with HUD, the first agency to which Hicks turned, might have occurred before the decision to discharge him. Hicks was told of his supervisor's decision to recommend the termination of his employment on July 13, 1973.[13] The record does not clearly shown when the company in fact decided to discharge him. The decision took effect on July 27. Hicks's deposition contains evidence that he had contacted HUD as early as July 9.[14] Plaintiff also gave specific evidence of a conversation showing that defendant's home office was disturbed by the contact with the agency.[15] The coincidence of the reaction at Abt Associates to the complaint to HUD and the decision to end Hicks's employment raises an inference that the complaint to HUD was one of the reasons for the decision to fire Hicks.

Defendant contends that the record does not show the substance of the complaint to HUD. Nevertheless, the context of the questions posed to Hicks at the point in the deposition where he discussed the company's reaction to his complaint to the agency supports a fair inference that the complaint was directed at the alleged sex and race discrimination by his employer.[16]

Defendant also argues that a complaint to HUD is not covered by Title VII, which refers only to "a charge . . . under this subchapter," viz. to the EEOC or a coordinate state agency. We have some doubts about this interpretation. Even if a charge filed with the EEOC is found to be without merit, the employee is protected in making that charge by section 704 and cannot be fired. *See, e. g., Pettway v. American Cast Iron Pipe Co.,* 411 F.2d 998, 1004–05 (5th Cir. 1969); *Bradington v. International Business Machines Corp.,* 360 F.Supp. 845, 854 (D.Md.1973), *aff'd mem.,* 492 F.2d 1240 (4th Cir. 1974). Defendant's interpretation would mean that if the employee first turned to the wrong agency even with a meritorious claim, that employee could be discharged before he was eventually directed to the EEOC. Such an interpretation would undercut the purposes of section 704.

▮ We do not need to decide that question, however, since we believe that Hicks's complaint to HUD would in any event be covered by the language protecting an employee who has "opposed any practice made an unlawful employment practice by this [Title]." By addressing a complaint to HUD, the source of the project funding, Hicks was in the process of opposing allegedly discriminatory practices by his employer, and was protected by the Act. *See generally Hochstadt v. Worcester Foundation for Experimental Biology,* 545 F.2d 222, 230–31 (1st Cir. 1976). Since at least this issue of fact is raised in the record, summary judgment on the claim for a retaliatory discharge was inappropriate at this point in the case.

### IV

The final issue raised on appeal is the failure of the trial judge to exercise his discretion to appoint counsel for plaintiff under section 706(f)(1), 42 U.S.C. § 2000e–5(f)(1). In light of our disposition of the case, we do not reach this question. A reversal on the basis of this final ground would have no effect beyond vacating the judgment. Further, the record shows that, during the proceedings in the district court, plaintiff became reemployed at a salary of $13,000. Since the financial means of plaintiff is one of several factors guiding the trial judge's exercise of discretion in appointing counsel under section 706(f)(1), *see, e. g., Caston v. Sears, Roebuck & Co.,* 556 F.2d 1305, 1309 (5th Cir. 1977), the changed circumstances make it inappropriate for this court to review the ruling below for prospective application. We therefore will leave the issue of appointment of counsel to

13. *Id.* at A–92.

14. *Id.* at A–90.

15. *Id.*

16. *Id.* at 91.

re-examination by the district court on remand.

## V

Since we find genuine issues of material fact in the record which, if proven, would support a claim under Title VII, we will vacate the grant of summary judgment to defendant and remand the case for further proceedings.

SEITZ, Chief Judge, concurring.

I agree with the majority that the district court committed error in granting defendant summary judgment on plaintiff's sex discrimination claim because of an issue of material fact as to whether the EEOC improperly refused to permit him to amend his charge to include sex discrimination. However, I cannot agree with the second basis for the majority's conclusion, viz., that the district court did not apply the correct standard in holding that it did not have jurisdiction over the sex discrimination claim.

The district court ruled that because plaintiff did not file a sex discrimination charge with the EEOC the district court did not have jurisdiction. The majority conclude that because a race discrimination charge was filed with the EEOC, the extent of the district court's jurisdiction is defined by the scope of the EEOC investigation which could reasonably have been expected to grow out of the discrimination charged, citing *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394 (3d Cir. 1976).

I believe the majority misapply *Ostapowicz* because the court was there concerned with two facets of a sex discrimination claim. Indeed the cases relied on in *Ostapowicz* demonstrate that the parameters of the discrimination charged must be accorded some respect. The *Ostapowicz* court itself recognized that there must be some limitations on actions in the district court if the statutory scheme of the EEOC is to be implemented. The majority, in my view, do violence to that statutory scheme to the extent they require the district court on this record to resolve this issue as a possible basis of district court jurisdiction of a sex discrimination claim.

Plaintiff filed with the EEOC a charge of discrimination and an amended charge. On both forms he checked the box marked Race or Color. On neither form did plaintiff check the box marked "Sex" under the heading "Cause of Discrimination." He had opportunities on both EEOC charge forms to "Explain what unfair thing was done . . . and how other persons were treated differently." Neither narrative contains the word "sex" nor any suggestion of sex discrimination. The agency investigated only the race discrimination claim and ruled thereon.

The majority state there is an issue of fact as to whether the investigation was adequate. Presumably they are referring to the investigation of the race discrimination claim. From this premise they conclude that if there was an inadequate investigation of the race discrimination claim, and an adequate investigation might have disclosed a basis for a sex discrimination claim, the plaintiff would be relieved of the necessity of asserting a sex discrimination claim.

I do not believe a claim of an inadequate investigation of a race discrimination claim requires a district court to hold a hearing to determine that issue and, if determined affirmatively, then to decide whether an adequate investigation of such claim might have unearthed a basis for a sex discrimination charge. Basic fairness dictates that the charged party should have some notice of the particular charge at the administrative level. Furthermore, some semblance of orderly administrative procedure must be maintained if the EEOC is to reasonably discharge its conciliation function and process its work.

I believe that as a matter of law on this record the district court has no jurisdiction to decide the sex discrimination claim on the basis of an alleged inadequate investigation of the race discrimination claim by the EEOC.