NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4742
_____

STEPHEN COREY JAMES,
                                        Appellant

v.

SUTLIFF SATURN, INC.
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil Action No. 09-cv-1081
(Honorable William W. Caldwell)
_____

Argued January 10, 2012

Before: SCIRICA, RENDELL and SMITH, *Circuit Judges*.

(Filed: March 15, 2012)

LISA JO FANELLI-GREER, ESQUIRE (ARGUED)
2806 Sunset Court
P.O. Box C
Grantham, Pennsylvania 17027
        Attorney for Appellant

SCHAUN D. HENRY, ESQUIRE (ARGUED)
RICHARD L. ETTER, ESQUIRE
McNees, Wallace & Nurick
100 Pine Street
P.O. Box 1166
Harrisburg, Pennsylvania 17101
        Attorneys for Appellee

ELIZABETH E. THERAN, ESQUIRE (ARGUED)
Equal Employment Opportunity Commission
131 M Street, N.E., 5th Floor
Washington, D.C. 20507
      Attorney for Amicus-Appellant,
      Equal Employment Opportunity Commission

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Stephen Corey James appeals the District Court's grant of summary judgment on race and disability discrimination claims he brought against Sutliff Saturn, Inc., under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons. Stat. § 951 *et seq.* We will affirm the District Court's judgment on the race discrimination claim but vacate and remand on the disability claim.

I.

James, who is African-American, was hired in 1999 as an appearance technician at Sutliff's Carlisle Pike facility. Over the next five years, James was disciplined three times. In 2005, he was transferred to Sutliff's Harrisburg location. On November 7, 2005, Sutliff granted James medical leave to undergo knee surgery. During his absence, Sutliff promoted a white technician to fill James's position. When James returned to work on March 7, 2006, Sutliff terminated his employment.

As a result of his termination, James filed pro se a charge of race discrimination with the Pennsylvania Human Relations Commission (PHRC) and the Equal Employment Opportunity Commission (EEOC) on March 16, 2006. After obtaining counsel, James sought to amend his charge to include a claim for disability discrimination. On September 2, 2006, James contacted the PHRC through counsel to request the amendment, which Randall R. Smedley, a Human Relations Representative, acknowledged by letter on November 3, 2006. Smedley's response directed James to complete an intake questionnaire, which was not an official PHRC form, but rather a printout from the PHRC's internal case management system. James completed the form, signing and dating each page. The completed printout and a cover letter were hand-delivered to Smedley on December 22, 2006. In the letter, James's counsel asked Smedley to contact her if he required any further information.

James received no further communication from the PHRC or the EEOC until the EEOC's Philadelphia Office sent a letter, dated March 5, 2009, notifying James of the dismissal of his discrimination charge and his right to sue in federal or state court. James contacted the PHRC and was informed that his state charge had been dismissed in 2008. James then obtained a copy of the PHRC's 2008 Letter of Determination, which did not state any grounds for the dismissal. Shortly thereafter, James learned that Smedley had retired from the PHRC without processing his amendment. The disability charge had never been added to his race discrimination charge.

James filed suit in federal court on June 6, 2009, alleging race and disability discrimination. The District Court granted Sutliff's motion for summary judgment on the

3

race discrimination claim, finding that James failed to show that Sutliff's proffered legitimate explanation for the discharge was a pretext for discrimination. The court also granted summary judgment on the disability claim, reasoning that James failed to properly verify the amendment as required by statute.[1]

## II.

### A.

We analyze James's discrimination claims according to the familiar burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000).[2] Under this approach, the plaintiff must first establish a prima facie case. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the discharge. If the defendant does so, the presumption of intentional discrimination disappears, but the plaintiff can still prevail by showing that the employer's proffered reason is merely a pretext for discrimination.

This appeal challenges the District Court's application of the last stage of the burden-shifting framework and requires us to determine whether James put forth sufficient evidence of pretext. On summary judgment, James may meet his burden by

---

[1] The District Court had original jurisdiction over the Title VII and ADA claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the PHRA claims under 28 U.S.C. § 1367(a). We have appellate jurisdiction under 28 U.S.C. § 1291. We review a grant of summary judgment de novo. *Gonzalez v. AMR*, 549 F.3d 219, 223 (3d Cir. 2008). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

[2] We apply the *McDonnell Douglas* framework because, despite his claims to the contrary, James offers no direct evidence of discrimination. *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1071 (3d Cir. 1996) (en banc).

"providing evidence that would allow a fact finder reasonably to (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of the employer's action." *Sarullo v. United States Postal Service*, 352 F.3d 789, 799-800 (3d Cir. 2003) (citations and internal quotations omitted).[3]

Sutliff claims James's employment was terminated because his position was ably filled by another technician while he was absent on extended medical leave, and when James returned from leave there was not enough work to support two appearance technicians on staff. Sutliff claims it chose to retain James's replacement because he was an exemplary employee.

Disputing this proffered explanation, James points to evidence that he argues casts doubt on Sutliff's reasons. First, James asserts his own belief that he was fired on account of his race. Second, James alleges that a previous disciplinary incident reflected racial animus since he was disciplined for a mess in the detailing shop even though he had been away on leave, while two white co-workers, who had been present, were not disciplined. Third, James alleges that the General Sales Manager reprimanded him without cause when he visited the facility five days before his discharge. Fourth, James claims the Vice President of Sales and Marketing made light of his discharge and told him over the phone, "You're outta here." Finally, James cites the circumstances of his discharge: that he was one of only three African-American employees at the Harrisburg facility; that he was discharged immediately upon his return from medical leave, while a white employee

---

[3] To the extent the District Court said otherwise, this is the standard we apply on review.

5

was permitted to return to work after several months of leave; and that he, with six years of experience, was replaced by a white employee with significantly less experience.

James's evidence of pretext is insufficient. James's unsupported belief that he was fired for discriminatory reasons "falls far short of establishing pretext." *Sarullo*, 352 F.3d at 800. The comments made by members of management shortly before and after James's discharge may betray interpersonal tensions or insensitivity, but they carry no hint of racial animus. Nor do the circumstances of James's discharge discredit Sutliff's explanation. The bare fact that James's replacement was white and had less experience does not support an inference that race motivated the decision, particularly where James's disciplinary record does not compare favorably with that of his replacement. Likewise, the contrast James draws between his experience and that of a white employee who returned to work after a leave of absence does not support an inference of discrimination. Because the white employee worked as an administrative assistant, not as an appearance technician, her experience does not cast doubt on Sutliff's explanation that there was not enough appearance technician work to retain James. Finally, James's own statements undercut his claim that race was a motivating factor in his discharge. In his deposition, James acknowledged that he believed the prior disciplinary incident was unfair because he had been absent on leave, not because the discipline was based on race. Further, when pressed to give a reason why he believed his manager fired him because of race,  James could only offer that his manager did not seem to like him.

Accordingly, we conclude that James submitted insufficient evidence to allow a reasonable factfinder to conclude that Sutliff's explanation of the discharge was a pretext

6

for discrimination. The District Court's grant of summary judgment on the race discrimination claim was proper.

B.

James also contends the District Court erred in granting summary judgment on his disability claim. The court declined to consider the disability claim, finding that James failed to follow the procedural requirements for prosecuting a charge of discrimination under the ADA. To bring such a claim in court, an employee must first exhaust his administrative remedies by filing the charge "in writing under oath or affirmation" with the EEOC and equivalent state agency where appropriate. 42 U.S.C. § 2000e-5. The regulations clarify that the charge must "be in writing and signed and verified," defining "verified" to require that the charge be sworn to under oath "or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.9; 29 C.F.R § 1601.3(a).[4] James's original race discrimination charge satisfied this verification requirement. The intake questionnaire James filed to add a claim of disability discrimination did not.[5]

Our decision in *Hicks v. ABT Associates*, 572 F.2d 960 (3d Cir. 1978), presented similar but not identical circumstances. There, we vacated the grant of summary judgment, holding the case raised a genuine issue of whether the charging party had reasonably attempted to file an amendment to his discrimination charge, which was

---

[4] The PHRA similarly requires a charging party to file a "verified complaint, in writing," 43 P.S. § 959(a).

[5] The regulations do not specify whether an amendment to a verified discrimination charge must itself be verified. *See* 29 C.F.R. § 1601.12(b); 16 Pa. Code § 42.35. For purposes of this appeal, we assume without deciding that it must.

improperly rejected by the EEOC. *Id.* at 964. We reasoned that "[o]nce the charging party has done all that he can reasonably do to amend his charge in accordance with the Commission's regulations, the statutory policy of providing the EEOC with an opportunity to reconcile the grievance has been fulfilled." *Id.* In short, "[t]he individual employee should not be penalized by the improper conduct of the Commission." *Id.* at 964-65. The District Court distinguished *Hicks* with respect to only one of its two holdings,[6] indicating the decision was inapposite because in that case, unlike this one, the initial discrimination charge was broad enough to encompass both theories of discrimination alleged by the plaintiff. But this purported distinction has no bearing on whether James made a reasonable attempt to amend his charge.

In September 2006, James contacted the PHRC through counsel, requesting an amendment to his claim and asking Smedley, the PHRC case manager, how to proceed. Instead of sending James the PHRC's standard intake form, which includes language intended to satisfy the verification requirement, Smedley sent a two page printout from the agency's internal case management software, which contained no verification language, and directed James to answer the specified questions "in any format." After complying with these instructions, James reasonably believed that his amendment was being processed. Our analysis in *Hicks* applies here. James only failed to verify his

---

[6] In *Hicks*, we also considered the possibility that the plaintiff did not file any amendment with the EEOC. Assuming this were the case, we held that if the additional charge was so related to the acts that constituted the charge actually filed with the EEOC, such that the EEOC's investigation could reasonably be expected to encompass both bases of discrimination, then the additional charge should be cognizable in a subsequent lawsuit. *Hicks*, 572 F.2d at 965-67. In distinguishing *Hicks*, the District Court cited this portion of the opinion.

amended charge because he was misdirected by the PHRC's express filing instructions. By complying with those instructions, James satisfied the statutory policy of providing the PHRC with an opportunity to reconcile the grievance. He should not be penalized for the PHRC's error. On these facts, we conclude that James's failure to verify the amendment does not bar his disability discrimination claim.

III.

For the foregoing reasons, we will affirm the grant of summary judgment on James's race discrimination claim, vacate the grant of summary judgment on James's disability discrimination claim, and remand to the District Court to consider the merits of that claim.